## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JASON RIVERA,

     Plaintiff,

v.

                                 CASE NO.:

PREMIER BANKCARD, LLC,

     Defendant.

_____/

## COMPLAINT

1.     Plaintiff, Jason Rivera, alleges Defendant, PREMIER Bankcard, LLC, robocalled him more than 425 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA"), and Invasion of Privacy ("IOP").

2.     Shockingly, Americans were bombarded with 4.8 *billion* robocalls last month—an increase by an incredible 370% just since December 2015.[1]

3.     Upon information and belief, PREMIER Bankcard, LLC robocalled the Plaintiff a mindboggling 425 times.

4.     Upon information and belief, PREMIER Bankcard, LLC has a corporate policy to robocall people thousands of times.

5.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone

---

[1] YouMail Robocall Index, available at http://RobocallIndex.com/

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6.     Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.     The TCPA was enacted to prevent companies like PREMIER Bankcard, LLC from invading American citizens' privacy and prevent illegal robocalls.

8.     Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that

2

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11.    Violations described in the Complaint occurred while Plaintiff was in Tampa, Florida.

## FACTUAL ALLEGATIONS

12.    Plaintiff is a natural person and citizen of the State of Florida, residing in Tampa, Florida.

13.    Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

14.    Plaintiff is an "alleged debtor."[2]

15.    Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

16.     Defendant is a Limited Liability Company with its principal place of business in Sioux Falls, South Dakota, and conducts business in the State of Florida.

17.    Defendant is a "creditor" as defined by Florida Statute § 559.55(5).

18.    The debt that is the subject matter of this complaint is a "consumer debt" as defined

---

[2] The FCCPA defines the term "debtor" as "any natural person obligated or allegedly obligated to pay any debt." FLA. STAT. 559.55(2). Thus, not only is the actual debtor protected under the Act, "an alleged debtor is [also] protected by the Act from the prohibited practices set forth [in subsection 559.72]." See Desmond v. Accounts Receivable Mgmt., 72 So. 3d 179, 181 (Fla. 2nd DCA 2011) (finding that alleged debtor whose identity was mistaken for that of the actual debtor by defendant could sue under the Act); see also Bryant v. Credit Adjustments, Inc., 2011 U.S. Dist. LEXIS 25834 (S.D. Fla. 2011) (finding that non-debtor had standing to sue under the FCCPA where non-debtor reasonably believed she was the person who allegedly owed the debt).

by Florida Statute § 559.55(6).

19.    Plaintiff is the regular user and carrier of the cellular telephone number at issue, (727) 505-5903.

20.    Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21.    Based on the Plaintiff's caller ID, Defendant's calls to Plaintiff's phone originated from the number (866) 890-3387.

22.    Defendant did not have the "express consent" of the Plaintiff to call his cell phone.

23.    It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS)for each account they were calling on.

24.    Defendant was put on notice Plaintiff did not want the Defendant contacting him.

25.    In or about July of 2018, Plaintiff began receiving calls from the Defendant regarding an alleged debt with the Defendant.

26.    The Plaintiff revoked his consent on atleast four separate occasions, including but not limited to, in both January 2019 and April 2019. The Plaintiff stated to the Defendant that he was going through financial problems, did not have the money to pay, would call the Defendant when he had money to pay, and requested the Defendant stop calling him.

27.    Plaintiff asked the Defendant to stop calling him, stating that he was unable to make a payment and would call when he could make a payment.

28.    Even though Plaintiff asked the Defendant to stop calling him, the Defendant continued to harass the Plaintiff by placing calls day after day.

4

29.     Defendant also placed text messages to Plaintiff in an attempt to collect the alleged debt.

30.     Defendant did not have the express consent of the Plaintiff to call or text him on the accounts they called him on.

31.     On more than one occasion, when Plaintiff would answer Defendant's call, he was met with a distinct pause, in which Plaintiff would say "Hello…Hello?" before he was connected to a representative.

32.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

33.     Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

34.     Defendant made at least one call to (727) 505-5903.

35.     Defendant made at least one call to (727) 505-5903 using an ATDS.

36.     Defendant made at least four hundred and twenty-five (425) calls to (727) 505-5903.

37.     Defendant made at least four hundred and twenty-five (425) calls to (727) 505-5903 using an ATDS.

38.     Each call the Defendant made to (727) 505-5903 in the last four years was made using an ATDS.

39.     Each text message the Defendant sent to (727) 505-5903 in the last four years was made using an ATDS.

40.     Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

41.     Defendant has called other people's cell phones without their express consent.

42.     Upon information and belief, each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

43.     Plaintiff repeatedly requested the Defendant to stop calling  his cell phone, however, the Defendant continued to make calls.

44.     Plaintiff's conversations with the Defendant putting them on notice that he did not want more phone calls were ignored.

45.     Upon information and belief, Defendant has recorded at least one conversation with the Plaintiff.

46.     Defendant has made approximately four hundred and twenty-five (425) calls to Plaintiff's aforementioned cellular telephone number since in or about July of 2018 which will be established exactly once Defendant turns over their dialer records.

47.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls and text messages.

48.     By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

49.     Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

50.     Defendant's phone calls harmed Plaintiff by wasting his time.

51.     Defendant's phone calls harmed Plaintiff by causing him embarrassment.

52.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

53.     Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

54.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

55.     Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

56.     In the last 3 years, the Defendant has had 1,019 complaints reporter to the Better Business Bureau (BBB), of which 680 of those complaints are classified as being related to "Billing/Collection Issues. (According to bbb.org in September, 2019).

57.      Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

58.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

59.     Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

60.     Defendant willfully or knowingly violated the TCPA with respect to the calls to Plaintiff's cellular telephone.

<u>**COUNT I**</u>
**(Violation of the TCPA)**

61.     Plaintiff incorporates Paragraphs one (1) through sixty (60).

62.     Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

63.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

64.     Defendant, PREMIER Bankcard, LLC, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

65.     As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

66.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, PREMIER Bankcard, LLC, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>**COUNT II**</u>
**(Violation of the FCCPA)**

67.     Plaintiff incorporates Paragraphs one (1) ) through sixty (60).

68.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

69.     Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

70.     Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

71.     Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

72.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

<u>**COUNT III**</u>

**(Invasion of Privacy – Intrusion Upon Seclusion)**

73.     Plaintiff incorporates Paragraphs one (1) ) through sixty (60).

74.     Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

75.     All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

76.     Defendant's persistent autodialed calls to his cellular phone eliminated Plaintiff's right to be left alone.

77.     Defendant's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

78.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

79.     By calling his cellular phone, Plaintiff had no escape from these collection calls either in his home or when he left the home.

80.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

81.     Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to his cellular phone after requests to stop is highly offensive to a reasonable person.

82.     Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

83.     As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

*Amanda J. Allen, Esq.*

**Amanda J. Allen, Esquire**
Florida Bar No. 0098228
William Peerce Howard, Esquire
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Amanda@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
***Attorney for Plaintiff***